**O**

# United States District Court
# Central District of California

| | |
|---|---|
| ANTWAREN ROBERTS, | Case No. 2:13-cv-07461-ODW (JCx) |
|                  Plaintiffs, | |
|      v. | |
| | |
| CALIFORNIA DEPARTMENT OF | **ORDER GRANTING IN PART AND** |
| CORRECTIONS, J. BROWN, T. RODIN | **DENYING IN PART DEFENDANTS'** |
| (#56159), E. NIXON (#79734), S. | **MOTION TO DISMISS [39]** |
| HOLDER (#77625), E. PEREZ (#71336), | |
| E. RAMOS (#57029), G. CALDERON | |
| (#75622), B. CAMACK (#74448), D. | |
| SOTO (#59309), M. BLANKENSHIP | |
| (#71326), A. RODRIGUEZ (#76993), | |
| RON HUGHES (#44815), K. SMITH | |
| (#44815), TODD LANSFORD (#70462), | |
| ARBI MASHI KAMALI; DANNY | |
| LEVA, and DOES 1–50 | |
|                  Defendants. | |

## I.   INTRODUCTION

On January 27, 2014, Defendants filed a Motion to Dismiss Plaintiff Antwaren Roberts's First Amended Complaint.  (ECF No. 13.)  On September 30, 2012, Roberts was a prisoner at the California Men's Colony in San Luis Obispo, California, when two inmates stabbed him in his cell.  He alleges that Defendants—various corrections officers and prison officials—failed to protect him.   Roberts alleges claims for violations of his Eight Amendment rights under 42 U.S.C. § 1983, as well as state-law torts arising out of the stabbing and lack of security personnel at the prison.  But after reviewing Roberts's First Amended Complaint, the Court finds that Roberts has failed to state a valid claim for relief and Defendants would not be able to plausibly respond to Roberts's terse allegations.  (ECF No. 39.)  The Court accordingly **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.[1]

## II.   FACTUAL BACKGROUND

Plaintiff Antwaren Roberts, formerly a state prisoner confined by the California Department of Corrections and Rehabilitation ("CDCR"), filed this complaint under 42 U.S.C. § 1983 on October 10, 2013.  (ECF No. 9.)  The events giving rise to this suit occurred while Roberts was incarcerated at the California Men's Colony ("CMC") in San Luis Obispo, California.  (*Id*.)  Roberts alleges that Defendants violated the Eighth Amendment of the United States Constitution by failing to protect him from a stabbing by fellow inmates in his cell and when Defendants housed him near his attackers following the assault.  (FAC ¶ 38; 11:23–26.)

On September 30, 2012, during a routine pill count, all of the inmates housed on the third floor of close-B were allowed to line up, receive their medication, and return to their cells.  (*Id.* ¶ 49.)   As the third-floor supervising officer on duty, Defendant Todd Rodin accompanied the nurse as she passed out medication.  (*Id.*) Rodin was responsible for "[throwing] the bar open" to allow all close-B inmates to

---

[1] After considering the papers filed in support of, and in opposition to, the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7–15.

1   receive their medication.  (*Id.*)  During the count, Rodin observed inmates "sticking
2   their heads out of the cells around the area of cell 5337," and he ordered the inmates to
3   return to their cells.  (*Id.* ¶¶ 50, 51.)  The inmates complied with Rodin's command.
4   (*Id.* ¶ 52.)

5          Shortly thereafter, Rodin observed Roberts fall backwards out of his cell and
6   land on his back, covered with blood on his head and face.  (*Id.* ¶ 53.)  Roberts
7   sustained 18 stab wounds to the head, neck, and chest area.  (FAC ¶¶ 44, 69.)  It was
8   later determined that Defendants Arbi Mashi Kamali and Danny Leyva[2] had
9   committed the stabbing, as they were both seen by Rodin crawling out of Roberts's
10  cell covered in blood immediately following the incident.  (*Id.* ¶ 56.)  After ordering
11  Kamali and Leyva to get down to the ground, Rodin called for assistance and initiated
12  an emergency response.  (*Id.* ¶¶ 60, 59.)

13         Somehow, Roberts made his way to the second floor of the facility where
14  Defendant Steven Holder, another corrections officer, stopped him.  (*Id.* ¶¶ 66–67.)
15  Holder later escorted Roberts in the ambulance to the hospital.  (*Id.* ¶ 70.)  Defendants
16  Daniel Soto and M. Blankenship secured Kamali and Leyva's cell and searched it for
17  evidence.  (*Id.* ¶ 68.)  Soto interviewed Roberts, and Roberts stated that the attack was
18  over a stolen cell phone.  (*Id.*)

19         Once Roberts was treated and released from the hospital, he was housed in
20  administrative segregation to protect him from further assault.  (*Id.* ¶ 72.)  Roberts
21  alleges that he was housed next door to Kamali and Leyva where he was continually
22  harassed and threatened, causing him to suffer emotional distress.  (*Id.*)  Roberts
23  repeatedly requested to be moved to a different housing unit but was not transferred
24  until the Prison Law Office intervened.  (*Id.* ¶ 73.)
25  / / /

26
27  [2] Leyva is a validated member of the Sureños, a southern Hispanic gang under the direction of the
    Mexican Mafia.  (FAC 9:22–23.)  Roberts is a documented San Diego Crip.  (*Id.* 9:20.)  Plaintiff
28  makes mention that the Mexican and Black inmates were at war with one another at the time of the
    attack.  (*Id.* 9:25–10:1)

1    On October 10, 2013, Roberts filed this action against CDCR[3]; Jerry Brown,

2    Governor of the State of California; Jeffrey Beard, CRCR's Secretary; Matthew Cate,

3    CDCR's former secretary; R. Hughes, Correctional Lieutenant; K. Smith, C-Facility

4    Captain; T. Lansford, Corrections Sergeant; and corrections officers Rodin, Holder,

5    Perez, Ramos, Calderon, Camack, Soto, Rodriguez.  (ECF No. 3.)

6    On January 27, 2014, Defendants filed this Motion in which Rodin—

7    represented by separate counsel—joined.  (ECF No. 39.)  Roberts timely opposed.

8    (ECF No. 61.)  That Motion is now before the Court for decision.

9                          **III.   LEGAL STANDARD**

10   A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable

11   legal theory or insufficient facts pleaded to support an otherwise cognizable legal

12   theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To

13   survive a dismissal motion, a complaint need only satisfy the minimal notice pleading

14   requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v.*

15   *Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to

16   raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550

17   U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter,

18   accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.*

19   *Iqbal*, 556 U.S. 662, 678 (2009).

20   The determination whether a complaint satisfies the plausibility standard is a

21   "context-specific task that requires the reviewing court to draw on its judicial

22   experience and common sense."  *Id.* at 679.  A court is generally limited to the

23   pleadings and must construe all "factual allegations set forth in the complaint . . . as

24   true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d

25   668, 688 (9th Cir. 2001).  But a court need not blindly accept conclusory allegations,

26

27   [3] Roberts no longer pursues claims against CDCR, and thus effectively dismisses CDCR from the
     Complaint.  (Opp'n 9 n.3.)  Roberts agrees that CDCR is entitled to Eleventh Amendment immunity

28   from the 42 U.S.C. § 1983 claims and that California Government Code § 844.6 grants CDCR
     immunity for the state-law claims.  (*Id.*)

unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.    DISCUSSION

Roberts brings seven claims[4] against Defendants, including (1) a violation of Plaintiff's rights under the Eighth Amendment; (2) "Failure to Implement Title 15's Rules and Regulations"; (3) negligence; (4) negligent supervision; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; and (7) violation of mandatory duties owed to prisoners.  The Court considers each claim in turn.

Initially, the Court notes that Roberts devotes an extensive amount of his oversized Opposition[5] to discuss the issue of California's prison overcrowding.  While this topic of discussion is certainly relevant, it is a soliloquy that causes the core matter of this case to be lost.  What's more, Plaintiff concedes that CDCR should be dismissed from this lawsuit, but again, dedicates a substantial amount of time arguing that the CDCR is not entitled to immunity under the California Government Code section 815.2(b).   (Opp'n 29–31.)   But the main issue in this case is whether Defendants bear potential liability stemming from Roberts's prison stabbing—not whether California has complied with prison-overcrowding orders.

**A.    State-law immunities**

Defendants argue that California Government Code sections 820.8 and 845.2 immunize them from liability for any of Roberts's state-law claims.

*1.    Section 820.8*

Under California Government Code section 820.8, a public employee is immune from liability for his discretionary acts when a plaintiff fails to allege the

---

[4] Roberts asserts his eighth and ninth causes of action against Kamali and Leyva alone.  The Court previously disposed of those claims via default judgment in Roberts's favor.
[5] Plaintiff's Opposition brief was 33 pages, which is 8 pages in excess of the 25-page limit established by Local Rule 11-6.  The Court warns counsel that continued failure to comply with the Local Rules may subject her to sanctions within this Court's discretion under Local Rule 83-7.

public employee's personal involvement.  *See Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1975) (stating that under section 820.8, "supervisory personnel whose personal involvement is not alleged may not be responsible for the acts of their subordinates under California law"); *see also Weaver By & Through Weaver v. State*, 63 Cal. App. 4th 188 (1998) (stating that a Commissioner of CHP officers was not liable because he did not train officers and was not personally involved in the incident in any way).  But a public employee can be liable for injury proximately caused by his or her own negligence.  Cal. Gov't Code § 820.8.

### a. Rodin

While it is undisputed that Kamali and Levya were the individuals that stabbed Roberts inside his jail cell, Roberts alleges that Rodin was also responsible for his attack as a "primary participant."  (FAC ¶ 11.)  Roberts contends that Rodin had allegedly "threw the bar open" and allowed Kamali and Levya, who were apparently housed on another floor, to access his cell.  (*Id*. ¶ 49.)  In addition, Roberts alleges that Rodin allowed inmates to exit the crime scene following the stabbing.  (*Id*. ¶¶58.)  This all leads to at least a potential inference that Rodin knew that Kamali and Leyva were going to attack Roberts and that Rodin possibly aided Kamali and Leyva.  While Roberts's allegations are tenuous at this point, they are enough to at least propel him through the motion-to-dismiss stage.

Rodin therefore bears potential liability for Roberts's state-law claims, and the Court **DENIES** the Motion with respect to Rodin on this ground.

### b. Remaining defendants

But Beard, Brown, Calderon, Camack, Cate, Holder, Hughes, Lansford, Perez, Ramos, Rodriguez, Smith, and Soto correctly point out that they cannot be liable for the alleged actions of inmates Kamali, Leyva, or Rodin.  (Reply 10:26–11:2.) Roberts contends that Defendants housed him next door to his attackers where he was harassed and threatened following the stabbing.  (*Id*. ¶ 72.)  Yet he fails to state any specific information linking Beard, Brown, Calderon, Camack, Cate, Holder, Hughes,

1    Lansford, Perez, Ramos, Rodriguez, Smith, and Soto to the incident sufficient to

2    establish negligence, negligent-supervision, negligent and intentional-infliction-of-

3    emotional-distress, or a violation-of-mandatory-duties claims.

4    The Court thus **GRANTS** the Motion with respect to the remaining Defendants

5    on this ground.

6       *2.    Section 845.2*

7    California Government Code section 845.2 grants immunity to public

8    employees for the failure to provide sufficient equipment, facilities, or personnel

9    within a prison.  Here, Roberts equates prison overcrowding with a claim for lack of

10   personnel within a prison.  (FAC 8:20–25.)  Accordingly, section 845.2 immunizes all

11   Defendants.  *See Estate of Abdollahi v. Cnty. of Sacramento*, 405 F. Supp. 2d 1194

12   (E.D. Cal. 2005) (stating a California statute immunized officials of liability for

13   failure to provide sufficient personnel for a correctional facility).

14   For these reasons, the Court **GRANTS** Defendants' Motion **WITHOUT**

15   **LEAVE TO AMEND** on this ground to the extent that Roberts seeks to impose

16   liability stemming from prison overcrowding.

17   **B.    Substantive claims**

18   Section 1983 provides a cause of action for the "deprivation of any rights,

19   privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  A

20   plaintiff must show that (1) a right secured by the Constitution was violated, and

21   (2) the deprivation of that right was committed by a person acting under the color of

22   state law.  *Chidacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir.

23   2011); *Shah v. Cnty. of L.A.*, 797 F.2d 743 (9th Cir. 1986).

24      *1.    Eighth Amendment*

25   Roberts contends that Defendants violated his Eighth Amendment rights

26   because they acted with "deliberate indifference" by failing to act reasonably to avoid

27   the risk of harm to Roberts's safety.  (FAC ¶¶ 86, 89.)

28   / / /

1    The Eighth Amendment protects prisoners from "cruel and unusual
2    punishment," which includes heinous methods of punishment and inhumane
3    confinement conditions. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).
4    Prison officials have a duty to take reasonable measures to protect prisoners from
5    being attacked by fellow inmates. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).
6    Consequently, prison officials violate the Eighth Amendment when they are
7    "deliberately indifferent" to the risk that a prisoner will be harmed by other inmates.
8    *Id.* at 833. A prison official can be liable when he is aware that a substantial risk of
9    serious harm exists and intentionally disregards it. *Id.* at 837. To establish such a
10   violation, the onus is on the plaintiff to show that (1) the conditions presented an
11   objectively substantial risk of harm that constitute cruel and unusual punishment; and
12   (2) the prison officials subjectively knew of an excessive risk to inmate health and
13   safety and failed to adequately respond to that risk. *Snow v. McDaniel*, 681 F.3d 978,
14   985 (9th Cir. 2012).

15           a. *Beard, Brown, Calderon, Camack, Cate, Holder, Hughes, Lansford,*
16              *Perez, Ramos, Rodriguez, Smith, and Soto*

17           At the outset, Roberts is unable to show direct factual allegations linking each
18   Defendant to each cause of action. While it is unfortunate that Roberts suffered injury
19   at the hands of his fellow inmates, Roberts seeks redress from the State of California
20   and prison officials solely because Kamali and Leyva—non-state actors—assaulted
21   him while confined in CMC. (ECF No. 9.) There are no facts to suggest that the
22   Defendants were deliberately indifferent to a subjectively known excessive risk of
23   harm to Roberts.

24           Roberts's allegations regarding any Defendants' direct involvement are rather
25   murky. Soto and Blankenship[6] allegedly secured Kamali and Leyva's cell and
26   searched for evidence following the incident. (FAC ¶ 68.) Holder stopped Roberts
27   after he made his way to the third floor following the attack and escorted Roberts in

28
_____
[6] Roberts does not name Blankenship as a defendant.

1    the ambulance to the hospital.  (*Id.* ¶¶ 66, 67, 70.)  Soto interviewed Roberts following

2    the incident.  (*Id.* at ¶ 68.)

3         All of the other Defendants were not even present at the scene of the incident.

4    Indeed, there are no factual allegations to indicate that Calderon, Camack, Hughes,

5    Lansford, Perez, Ramos, Rodriguez, or Smith had any direct involvement in the events

6    preceding or during the incident.  The officers' after-the-fact participation cannot

7    render them "deliberately indifferent" to a situation which they came into only after it

8    occurred.

9         Roberts instead focuses on the supervisory role that all of the other Defendants

10   held at the time.  A supervisor can be liable in his individual capacity for his own

11   culpable action or inaction in the training, supervision, or control of his subordinates;

12   for his acquiescence in the constitutional deprivation; or for conduct that showed a

13   reckless or callous indifference to the rights of others.  *Watkins v. City of Oakland*,

14   145 F.3d 1087, 1093 (9th Cir. 1998).  But not "every injury suffered by one prisoner

15   at the hands of another . . . translates into constitutional liability for prison officials

16   responsible for the victim's safety."  *Farmer*, 511 U.S. at 834; *see also Taylor v. List*,

17   880 F.2d 1040, 1045 (9th Cir. 1989).

18        To the extent that the Roberts seeks to hold any of the supervisory Defendants

19   vicariously liable, Roberts offers no facts to suggest that supervisory liability is

20   appropriate under established law.

21        Additionally, there is merely a general causal connection between prison

22   overcrowding and Roberts's stabbing in order to attach liability to Brown, Beard, and

23   Cate.  Roberts has failed to draw any factual connection establishing that any of

24   Defendants—with the potential exception of Rodin—knew of the risk that Roberts

25   could be stabbed in his jail cell and were "deliberately indifferent" in terms of their

26   response.  If anything, the facts suggest that the prison officials at the scene responded

27   adequately to the emergency.  Roberts may not rely on the fallacy of *post hoc ergo*

28   *propter hoc* to establish causation between prison overcrowding and his stabbing.  For

if the Court were to sanction this line of reasoning, essentially anyone who played some minute role in Roberts's life prior to the incident could be subject to potential liability for Roberts's injuries.

Without more specific factual allegations, Roberts fails to state a cognizable claim to suggest that other Defendants were aware of facts that conditions at CMC presented "an objectively substantial risk of harm" sufficient to establish an Eighth Amendment violation.

The Court consequently **GRANTS** Defendants' Motion to Dismiss **WITH LEAVE TO AMEND** against Beard, Brown, Calderon, Camack, Cate, Holder, Hughes, Lansford, Perez, Ramos, Rodriguez, Smith, and Soto for Roberts's Eighth Amendment claim.

### b. Rodin

But Roberts has alleged a bare minimum of facts to establish an actionable Eight Amendment claim against Rodin.  Rodin was responsible for guarding the pill count and helped pass out medication.  (FAC ¶ 49.)  As stated above, Rodin allegedly "threw the bar open" and allowed access to Roberts's cell.  (*Id.* ¶ 49.)  He was also the first officer to respond to the stabbing.  (*Id.* ¶¶ 50–53.)  The allegations that Kamali and Leyva were on the wrong floor and that Rodin opened the cell doors leads to at least a potential inference that Rodin knew that Kamali and Leyva were going to attack Roberts.  The allegations are tenuous, but Roberts need only aver Rodin's state of mind generally to withstand Rule 12(b)(6) attack.  Fed. R. Civ. P. 9(b).  The Court thus **DENIES** the Motion with respect to Rodin.

### 2. California Government Code sections 815.2 and 815.6

Roberts brings state-law claims under California Government Code sections 815.2 and 815.6 against Defendants for (1) negligent supervision, (2) intentional infliction of emotional distress, (3) negligent infliction of emotional distress, and (4) violation of mandatory duties.  But sections 815.2 and 815.6 apply to public entities—not individuals.  *See* Cal. Gov't Code § 815.2(a) (stating that a public entity

1   is liable for injury proximately caused by an act or omission of an employee if the act
2   or omission would have given rise to a cause of action against that employee); § 815.6
3   (stating that a public entity is liable for an injury caused by a failure to discharge that
4   duty).  Thus, both sections 815.2 and 815.6 are inapplicable to the state-law claims
5   that Roberts brings against the individual Defendants.

6       The Court accordingly **GRANTS** Defendants' Motion on this ground with
7   respect to all Defendants **WITHOUT LEAVE TO AMEND**.

8       *3.  Title 15 of the California Code of Regulations*

9       Roberts also alleges that the Brown, Beard, and Cate were aware of Title 15 of
10  the California Code of Regulations—which governs the rules and regulations of the
11  prisons—and thus somehow failed to prevent the attack from occurring.  (FAC ¶¶ 93–
12  94.)   He contends that Defendants Brown, Beard, and Cate violated the Supreme
13  Court's order in *Brown v. Plata*, 131 S. Ct. 1910 (2011), by permitting overcrowding
14  conditions to exist.  (FAC ¶ 94; Opp'n 28:15–19.)   In contrast, Defendants contend
15  that that Roberts fails to allege sufficient facts to support a claim against any of the
16  Defendants.  (Mot. 10:1–3.)   Defendants assert that "failure to implement Title 15
17  cannot be the basis of a § 1983 claim[,] because it rests on state, and not federal, law."
18  (Mot. 10:1–5.)

19      Roberts attempts to state a claim for Defendants' personal participation
20  grounded on "generalized allegations of overcrowding within the California prison
21  system." (Reply 11:8–10.)   Yet all Roberts has shown is that prison overcrowding is a
22  prevalent issue that should be addressed.   The historical background and discourse
23  regarding California's correctional system is intriguing and insightful.   But it cannot
24  be the entire basis for a § 1983 claim.   *See Rust v. Garcia*, No. ED CV 10-665-
25  PA(VBK), 2013 WL 6199264, at *12 (C.D. Cal. Nov. 26, 2013) (dismissing a claim
26  for violation of Title 15 of the California Code of Regulations because "there is no
27  independent cause of action for a violation of Title 15 regulations").

28  / / /

Roberts has not pointed to any particular facts to suggest that Brown, Beard, and Cate caused harm to Roberts by failing to address prison overcrowding. Without more, Roberts is unable to show that Beard, Brown, and Cate failed to prevent the attack from occurring.

Accordingly, the Court **GRANTS** Defendants' Motion on this ground **WITHOUT LEAVE TO AMEND** as to Defendants Beard, Brown, and Cate.

### 3.    *Negligent infliction of emotional distress*

Roberts alleges that each Defendant, with the exception of Kamali and Levya, was negligent and caused him to suffer serious emotional distress. (FAC ¶¶ 122–125.)

A plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person, if he or she is (1) closely related to the injury victim, (2) present at the scene of the injury when it occurs and is aware that it is causing injury to the victim, and (3) consequently, suffers emotional distress beyond anything anticipated by a disinterested witness. *Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989).

Robert's allegation does not fit the standard for negligent infliction of emotional distress, as he is not a third party that was close by when a victim was injured by someone else's negligence. Negligent infliction of emotional distress is simply inapposite here.

The Court accordingly **GRANTS** Defendants' Motion on this ground with respect to all Defendants **WITHOUT LEAVE TO AMEND**.

### C. Qualified immunity

Qualified immunity protects government officials acting in their official capacities from liability so long as their conduct does not violate a clearly established right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An officer who makes a "reasonable mistake" does not violate a "clearly established" right. *Venegas v. Cnty. of L.A.*, 153 Cal. App. 4th 1230, 1241–42 (2007). An official is afforded immunity if he acts under an objectively reasonable belief that his conduct is lawful. *Guerra v.*

*Sutton*, 783 F.2d 1371, 1374 (9th Cir. 1986).  When analyzing qualified immunity, a court must determine whether (1) the plaintiff alleged sufficient facts to show that the defendant's conduct violated a constitutionally protected right, and (2) the right violated was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

As discussed above, Roberts has alleged a bare minimum of facts to establish a potential Eight Amendment claim against Rodin, which is the first prong of the *Saucier* analysis.

The Court also finds that the right to be protected from violence while incarcerated is also clearly established.  Prison officials have a duty to take reasonable measures to ensure that prisoners are safe.  *Farmer*, 511 U.S. at 828; *see also Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (stating that because prisons are places of involuntary confinement of people who have demonstrated a proclivity for violent conduct, administrative personnel are under "an obligation to take reasonable measures to guarantee the safety of inmates").  In light of this Supreme Court case law, a reasonable corrections officer would have known that he had a duty to protect inmates from unnecessary violence in the prison.

The Court thus finds that Rodin is not entitled to qualified immunity and therefore **DENIES** the Motion on this ground.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.  Roberts may amend his Complaint as outlined in the Court's Order within 14 days if he may do so without violating Rule 11(b).

**IT IS SO ORDERED.**

April 1, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

13